IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

CARLIZ DE LA CRUZ-HERNANDEZ,

    **Plaintiff,**

          v.

RIMAS ENTERTAINMENT, LLC, *et al.,*

    **Defendants.**

CIVIL NO. 23-1162 (JAG)

### MEMORANDUM AND ORDER

GARCIA-GREGORY, D.J.

    Carliz De La Cruz-Hernández ("Plaintiff") brought claims against Benito A. Martínez-Ocasio; Noah Kamil Assad-Byrne; Rimas Entertainment, LLC; Rimas Classics, LLC; and Noah Assad, LLC (collectively "Defendants") in the Puerto Rico Court of First Instance alleging causes of action under the Puerto Rico Author's Moral Rights Act, P.R. LAWS ANN. tit. 31, § 1401s; the Puerto Rico general tort statute, P.R. LAWS ANN. tit. 31, § 10801; the Puerto Rico Right of Publicity Act, P.R. LAWS ANN. tit. 32, § 3152; as well as claims for violation of her right of privacy, damages, unjust enrichment, and estoppel. Docket No. 18-1. Pending before the Court is Plaintiff's Motion to Remand. Docket No. 19. For the reasons stated in this Memorandum and Order, the Court hereby **GRANTS** Plaintiff's Motion to Remand.

    The Complaint stems from Defendants' use of a recording of Plaintiff's voice ("the Recorded Phrase") in (i) two songs by Defendant Martínez-Ocasio's, and (ii) promotional material and concerts. Docket No. 18-1. Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 1454. Docket No. 1. Defendants aver this Court has subject matter jurisdiction based on 28 U.S.C. § 1338(a), which provides that district courts shall have

CIVIL NO. 23-1162 (JAG)                                                                      2

exclusive jurisdiction over any copyright claims. Docket No. 1 at 2. In her Motion to Remand, Docket No. 19, Plaintiff argues that the claims asserted arise under Puerto Rico state law "and the other remedies therein requested are not preempted by federal law." Docket No. 19 at 1-2. On the other hand, Defendants maintain the Complaint "falls within the Copyright Act and the behavior that gives rise to [Plaintiff's] state law claim[s] is the same behavior that gives rise to copyright liability"; thus, Defendants argue, the state law claims are preempted and removal was appropriate. Docket Nos. 1 at 6-7; 35 at 1.

"Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." *Acosta-Ramírez v. Banco Popular de P.R.*, 712 F.3d 14, 18 (1st Cir. 2013). A court must dismiss the action if, at any time, it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). In cases of removal, the Court must remand an action "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating its existence by a preponderance of the evidence. *See U.S. ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009). In the present case, Defendants, as the removing party, bear the burden of establishing the existence of subject-matter jurisdiction. Furthermore, "because removal jurisdiction raises serious federalism concerns, we construe removal statutes *strictly* and *against* removal." *Rhode Island v. Shell Oil Prods. Co., L.L.C.*, 35 F.4th 44, 52 (1st Cir. 2022) (citing *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002); and *Rosselló-González v. Calderón-Serra*, 398 F.3d 1, 11 (1st Cir. 2004)). When "federal jurisdiction is doubtful, a federal court must remand to state court." *Id.* Thus, the Court must first resolve the issue of preemption as it pertains to Plaintiff's claims. If Defendant cannot show that Plaintiff's claims are preempted, then the Court lacks jurisdiction over the Complaint and must remand the action to state court.

CIVIL NO. 23-1162 (JAG)                                                                                    3

## PREEMPTION

> The Copyright Act preempts all causes of action for conduct governed by federal copyright law. To avoid preemption, a cause of action defined by state law must incorporate elements beyond those necessary to prove copyright infringement, and must regulate conduct qualitatively different from the conduct governed by federal copyright law.

*Alvarez Guedes v. Martinez*, 131 F. Supp. 2d 272, 279 (D.P.R. 2001) (cleaned up). Plaintiff avers that her "quest to vindicate and protect her moral and publicity rights is grounded exclusively in what Puerto Rico law protects," which are qualitatively different from the conduct governed by the Copyright Act. Docket No. 19 at 2, 21. Meanwhile, Defendants frame the controversy as "based solely on the premise that Defendants reproduced the Recorded Phrase without her consent in the Song Recordings" and, therefore, "this is a copyright claim cloaked in state law citations." Docket Nos. 1 at 12; 35 at 9. The Court is not convinced.

## I.   Moral Rights Act

Defendants note that "this District has previously determined that a moral rights claim under Puerto Rico law is preempted under the Copyright Act if the plaintiff's theory of recovery under the moral rights claim is identical to the copyright infringement claim." Docket No. 1 at 12. Nevertheless, Defendants fail to fully explain why Plaintiff's moral rights claims are identical to a copyright infringement claim. Rather, Defendants simply conclude that "each of Plaintiff's theories of recovery are the same throughout the Complaint, however characterized or titled," and that "Plaintiff seeks to prevent or control the dissemination of the Snippet, a sound recording." *Id.* at 12; Docket No. 35 at 10. Defendants, as the removing party, bear the burden of demonstrating that Plaintiff's claims are preempted by the Copyright Act so as to establish the existence of federal jurisdiction.

CIVIL NO. 23-1162 (JAG)                                                                                    4

"In Puerto Rico, intellectual property right is composed of two rights: a moral right that protects the link between the author and her work, and a patrimonial right that grants her a monopoly over the exploitation of the work." *Venegas Hernandez v. Peer Int'l Corp.*, 270 F. Supp. 2d 207, 213 (D.P.R. 2003) (citation omitted); *see also Perea v. Ed. Cultural, Inc.*, 13 F.4th 43, 47 n.2 (1st Cir. 2021). Patrimonial rights involve the right to "reproduce and perform the work, as well as the right to create derivative works, and to receive benefits derived from these acts." *Id.* (citation omitted). Patrimonial rights are those that would fall squarely in the purview of Copyright law. *See Venegas Hernandez*, 270 F. Supp. 2d at 214 ("[T]he courts refused to delve into the second prong of a copyright inquiry . . . because it implicated those patrimonial rights preempted by the Copyright Act."). Moral rights on the other hand "protect[] the right to attribution of the work and the right to demand and protect the integrity of the work." *Id.* By its nature, moral right protections provide remedies for conduct that is uniquely different from conduct that would give rise to a copyright infringement claim. Thus, a claim for infringement of one's moral rights is not preempted by the Copyright Act when a plaintiff seeks protections and enforcement of rights outside the scope of patrimonial rights and federal copyright law. *Id.* ("[T]he state case implicated legal rights that are not included within the preemptive scope of the Federal Copyright Act, and are in fact reserved to the states.") "[M]oral rights are rights of a spiritual, non-economic and personal nature that exist independently of an artist's copyright in his or her work . . . and that the artist's personality . . . should therefore be protected and preserved." *Pottier v. Hotel Plaza Las Delicias, Inc.*, 379 F. Supp. 3d 130, 133 (D.P.R. 2019) (cleaned up). Specifically, the Puerto Rico Moral Rights Act "acknowledges differences between United States law under the Copyright Act . . . and the roots of Puerto Rico's moral rights law in the Spanish Intellectual Property Law of 1879. The Court

CIVIL NO. 23-1162 (JAG)                                                                 5

recognizes this distinction and the Legislative Assembly's expressed intent that the [Puerto Rico Moral Rights Act] complement federal law." *Id.* at 137.

Defendants cannot simply offer the conclusion *ad nauseum* that Plaintiff's "allegation[s] [are] a *de facto* claim for the infringement of the Copyright Act's distribution or adaptation rights," while relying on cases that predated the enactment of the Puerto Rico Moral Rights Act and erroneously concluding that the alleged "wrong is the same under both state and federal law." Docket No. 35 at 20, 22. Plaintiff's Complaint is clear that it is seeking enforcement of her moral rights under state law, which are distinct from those rights provided under the Copyright Act. Wherefore, the Court finds that Plaintiff's moral rights claim is not preempted by federal copyright law.

II.    **Right of Publicity**

"The extent to which state right-of-publicity laws are preempted by federal copyright law is unclear. Some publicity claims have been held preempted; others have not." 6 Callmann on Unfair Comp., Tr. & Mono. § 22:34 (4th ed.). The First Circuit has yet to definitively opine on this issue. The Puerto Rico Right of Publicity Act provides that,

> [a]ny natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the for[e]going shall be liable for damages.
>
> In the event that the consent required under this chapter is not obtained, the plaintiff may seek an injunction against the continued use of said likeness and can recover monetary damages, including any royalties accrued, or financial losses resulting from the violation of the right established herein.

P.R. LAWS ANN. tit. 32, § 3152. As to whether the Copyright Act preempts right of publicity claims,

> some courts have held that, when a state's right of publicity claim
> includes a commercial purpose or commercial use requirement, that
> element constitutes an extra element, beyond what is required to
> establish a claim of copyright infringement, so that it
> takes right of publicity claims outside the general scope of
> copyright, which does not require a commercial purpose as an
> element of a claim of infringement.

*Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022) (cleaned up). In determining

whether an extra element favors preemption or not, the Court must conduct a "holistic evaluation

of the nature of the rights sought to be enforced and then make a determination whether the state

law action is *qualitatively* different from a copyright infringement claim." *Id.* (cleaned up).

Defendants submit that "Plaintiff's Right [of] Publicity claim boils down to the objection

of having her voice used or reproduced in the Song Recordings" and "[t]he fact that a right [of]

publicity includes the commercial use of the voice is an element does not save Plaintiff's claim

from preemption." Docket No. 1 at 11. Plaintiff, in response, notes that Defendants "omitted any

mention that the [C]omplaint is predicated on the unauthorized use of Plaintiff's *voice* or likeness,

a protected right under Puerto Rico's Right of Publicity Act." Docket No. 19 at 3.

Plaintiff's claims center around the use of her likeness, i.e., voice, and the commercial

benefit reaped by Defendants from her identity and status as Defendant Martínez-Ocasio's former

romantic partner. The issue is not the use of the Recorded Phrase, but rather the use of Plaintiff's

likeness. *See* Docket No. 18-1, ¶ 48 ("With the intention of making the phrase 'Bad Bunny baby'

even more original, they both had the idea that it would be better to record it with the voice of

[Plaintiff], his girlfriend."). There is a particular and unique commercial benefit to the use of

Plaintiff's voice on the album *Un Verano Sin Ti*, an album that thematically centers around

heartbreak and past romantic trysts, specifically the use of Plaintiff's likeness on the song "Dos

Mil 16," which alludes to the time period during which Plaintiff and Defendant Martínez-Ocasio

CIVIL NO. 23-1162 (JAG)                                                                              7

dated, and on the song "Pa Ti," which similarly pertains to a romantic relationship and was

released while Plaintiff and Defendant Martínez-Ocasio dated. *See* Docket No. 18-1, ¶¶ 10, 13, 58,

66. The benefit of Plaintiff's likeness is further underscored by (i) the public commentary that the

voice "was recorded by [Defendant Martínez-Ocasio's] former girlfriend," (ii) the assumptions by

"thousands of Martínez's fans . . . that the album and the song in question are dedicated to

[Plaintiff] since Martínez purposefully used [her] voice again after so much time has passed," and

(iii) the fact that "thousands of people have commented about 'Bad Bunny Baby' directly on

[Plaintiff's] social media pages, as well as every time she goes to any public place." Docket No. 18-

1, ¶¶ 111, 119-120. Furthermore, Defendants themselves note that "to avoid preemption Plaintiff

would need to allege facts indicating how the alleged alteration . . . affected her reputation."

Docket No. 35 at 13. Plaintiff does make this allegation. Additionally, Defendants have not

sufficiently addressed why the extra elements in a right of publicity claim—likeness and

commercial benefit—do not render it qualitatively different from a copyright infringement claim.

Therefore, in an abundance of caution and considering the "serious federalism concerns" that arise

under removal jurisdiction, the Court finds that Defendants have not shown that Plaintiff's right

of publicity claims are preempted by federal copyright law.

III.     **Unjust Enrichment, the Doctrine of Estoppel, Tort, and Damages**

Defendants center their discussion and frame the controversy as "based solely on the premise that

Defendants reproduced the Recorded Phrase without her consent in the Song Recordings."

Docket No. 1 at 12. Defendants posit that Plaintiff's unjust enrichment claim is preempted.

Nevertheless, the unjust enrichment claim stems from the right of publicity claim, the use of

Plaintiff's likeness for commercial value, and the moral rights claim, which establish rights firmly

outside the purview of the Copyright Act. "Unjust enrichment is a doctrine based in equity which

CIVIL NO. 23-1162 (JAG)                                                                                      8

seeks to do justice in the absence of a contractual or legal obligation, and its purpose is to avoid the inequity of a person unjustly enriching himself at the expense of another." *Ocaso, S.A., Compañia de Seguros y Reaseguros v. P.R. Mar. Shipping Auth.*, 915 F. Supp. 1244, 1263 (D.P.R. 1996) (citations omitted). An unjust enrichment claim under Puerto Rico law requires "(1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause. *Rivera v. Marriott Int'l, Inc.*, 456 F. Supp. 3d 330, 339 (D.P.R. 2020) (cleaned up). Defendants' position is that Plaintiff is simply seeking a remedy for the use of the Recorded Phrase without appropriate compensation. The Court disagrees. Rather, Plaintiff is seeking remedies for the unauthorized use of her likeness for commercial benefit pursuant to rights created by state law that extend beyond those contemplated by federal copyright law.

Similarly, Plaintiff's doctrine of estoppel relates back to and pertains to the right of publicity claims. Defendants have not demonstrated that Plaintiff's estoppel claim seeks remedies equivalent to those provided by copyright law, especially since estoppel is not a separate cause of action but merely a limit on the arguments at Defendants' disposal.

Finally, the Court is similarly unpersuaded by Defendants' assertion that the "tort claim is based precisely on Defendants' alleged negligence acts of using Plaintiff's voice and lyrics, without her consent [and thus] falls squarely within the subject matter if the Copyright Act." Docket No. 35, at 15. Defendants, as the party seeking this Court's jurisdiction, cannot rest their argument on the conclusion that Plaintiff only seeks remedy for the use of the Recorded Phrase without consent while failing to engage in deeper discussion or further development. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Issues adverted to in a perfunctory manner, unaccompanied by some

CIVIL NO. 23-1162 (JAG)                                                                          9

effort at developed argumentation, are deemed waived.").[1] Wherefore, the Court finds that Defendants have not sufficiently shown that Plaintiff's unjust enrichment, estoppel, and tort claims are preempted.

## CONCLUSION

As Defendants have not met their burden of establishing the existence of federal jurisdiction in this case—and considering that removal statutes should be construed strictly and against removal—Plaintiff's Complaint is hereby **REMANDED** to the Puerto Rico Court of First Instance, San Juan Division. The Clerk of Court shall take notice and remand this case forthright.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Sunday, March 31, 2024.


                                                                        s/ Jay A. Garcia-Gregory
                                                                        JAY A. GARCIA-GREGORY
                                                                        United States District Judge

---

[1] Defendant's discussion of the claims under Puerto Rico's general tort statute and the right to privacy is equally threadbare. Docket No. 1 at 10, 12-13.